IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GIBBONS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 16-1233 |
| MONTGOMERY COUNTY, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**MARILYN HEFFLEY, U.S.M.J.**                                                    **July 18, 2016**

Pending before this Court are two Motions to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6).  One Motion to Dismiss filed by employees of PrimeCare Medical, Inc. ("PrimeCare") seeks dismissal of Plaintiff John Gibbons' ("Gibbons") Complaint in its entirety.  The PrimeCare employees, who are alleged to have provided medical services to inmates at the Montgomery County Correctional Facility ("MCCF") when Gibbons was incarcerated there, are Mary Rinehart, R.N. ("Rinehart"), Christine E. Irvine, R.N. ("Irvine"), Seth Crossan, R.N. ("Crossan"), Debra McFadden, R.N. ("McFadden") and Octavier Brown, LPN ("Brown") (collectively, the "PrimeCare Employee Defendants").  PrimeCare Defs.' Mot. (Doc. No. 10) at 1.  The second Motion to Dismiss filed by Montgomery County, MCCF, and individuals employed by Montgomery County, namely Warden Julio M. Algarin ("Algarin"), Correctional Officer ("C.O.") Philip Rummel ("Rummel"), C.O. Shicknick ("Shicknick"),  C.O. Jones ("Jones"), C.O. Davenport ("Davenport"), C.O. Baurer ("Baurer"), C.O. Davis ("Davis") and C.O. Appel ("Appel") (collectively, the "County Defendants"), seeks partial dismissal of the Complaint.

Cnty. Defs.' Mot. (Doc. No. 12) at 1-2.  For the reasons that follow, the Motions will be granted in part and denied in part.

## I.   <u>BACKGROUND</u>

Gibbons' Complaint alleges as follows.  On March 28, 2014, while he was an inmate at MCCF, Gibbons was injured when he slipped on a puddle of water while running in the facility's gymnasium.  Compl.  (Doc. No. 1) ¶¶ 34-35.  Following the incident, Gibbons advised Rummel that he was severely injured and needed medical assistance, but he was ignored and directed back to his housing pod.  <u>Id.</u> ¶ 36.  Gibbons proceeded to place telephone "sick call" requests for medical assistance to MCCF each day from March 28, 2014 until April 9, 2014 that were ignored by MCCF and PrimeCare medical staff.  <u>Id.</u> ¶¶ 38-51.  He was finally seen by Rinehart on April 10, 2014, but was afforded "no medical treatment or follow[-]up examination/testing."  <u>Id.</u> ¶¶ 38-52.  Gibbons continued to lodge "sick call" complaints via telephone, as well as verbal complaints about his pain and injury to Shicknick and Davis, until April 16, 2014, when he was finally seen by Dr. Margaret Carillo ("Dr. Carillo") who advised Gibbons that he had a ruptured Achilles tendon.  <u>Id.</u> ¶¶ 53-56.

On April 21, 2014, Gibbons was sent to orthopedic foot and ankle surgeon, Dr. Jamal Ahmad ("Dr. Ahmad"), at the Rothman Institute in Philadelphia, who diagnosed Gibbons with a torn Achilles tendon.  <u>Id.</u> ¶¶ 60-61.  Dr. Ahmad also requested an immediate MRI of his ankle injury to assess for further damage, which Gibbons alleges Dr. Carillo ignored.  <u>Id.</u> ¶ 68.  Dr. Ahmad also prescribed Gibbons an Achilles boot.  <u>Id.</u> ¶ 66.  Denise McDermott ("McDermott"), also of the Rothman Institute, placed Gibbons' foot in a cast and asked Davenport to ensure that a boot, crutches and "a bag big enough to protect [] Gibbons' ankle" were made available to him. <u>Id.</u> ¶ 67.  Upon returning to MCCF, Gibbons contends that Davenport and others denied him

access to the Achilles boot and a plastic bag.  Id. ¶¶ 66-69.  Three days later, on April 24, 2014, Gibbons was taken to Mercy Suburban Hospital for an MRI.  Id. ¶ 72.  On April 25, 2014, Gibbons asked Appel if a boot and protective plastic bag were available, but was ignored.  Id. ¶ 74.

On April 28, 2014, PrimeCare, MCCF, Montgomery County, Dr. Carillo, Crossan and/or Algarin replaced the telephone sick call request system with a paper system.  Id. ¶ 76.  On April 29, 2014, Gibbons submitted a paper sick call request to obtain an update on his treatment plan and advised that the plastic bag he was given to cover his cast had ripped and that his cast was soaked with water.  Id. ¶ 77.  On May 1, 2014, McFadden responded that per doctor's orders, Gibbons should not bear any weight on the leg, should use his crutches and that "everything was in progress."  Id. ¶¶ 73-82.

On May 5, 2014, Baurer transported Gibbons back to the Rothman Institute for a follow-up visit with Dr. Ahmad, at which point Gibbons was informed that he had a "10+ cm tear of his Achilles up to his calf, which would require major surgery with a replacement donor or cadaver Achilles."  Id. ¶¶ 83-84.  During the visit, Dr. Ahmad prescribed Gibbons another Achilles boot and McDermott gave Gibbons a "large shopping bag to keep his cast from getting wet in the shower" that was immediately confiscated by Baurer and not replaced.  Id. ¶ 87.  Upon returning to MCCF later that day, Gibbons fell down a staircase and broke his cast.  Id. ¶ 88.  Gibbons contends that despite reporting the incident, he was ignored by all of the MCCF and PrimeCare medical staff, with the exception of Dr. Carillo who submitted a "Consultation Appointment/Emergency Room Referral" form stating that Gibbons suffered from an Achilles rupture to be addressed via surgery following his release from prison.  Id. ¶¶ 89-91.

Gibbons continued to submit sick call requests on May 6, 7, 11, and 12, 2014 and twice on May 13, 2014, id. ¶¶ 93-102, and alleges that the only medical assistance provided included: (1) a response on May 9, 2014 from Brown that Gibbons was scheduled for a follow-up appointment with Dr. Carrillo, id. ¶ 96, (2) a response on May 12, 2014 stating, "Provider to follow up with you concerning boot – please be patient," id. ¶ 98, and (3) two responses on May 14, 2014 that Gibbons was "[o]n list to be seen," id. ¶ 102.

Gibbons was released from MCCF on May 16, 2014.  Id. ¶ 103.  On July 31, 2014, he underwent reconstructive surgery of his left Achilles tendon and that "an acute surgical repair was not an option" due to the treatment delay he suffered while incarcerated at MCCF.  Id. ¶¶ 105-06.

Gibbons subsequently filed this lawsuit on March 17, 2016.  Count I of the Complaint alleges pursuant to 42 U.S.C. § 1983 that each of the medical professionals and correctional officers in their individual capacities exhibited a willful, reckless and callous disregard of Gibbons' Eighth Amendment right to receive adequate medical treatment while incarcerated at the MCCF.  Id. ¶¶ 109-13.  Count II of the Complaint alleges the same as to Montgomery County, MCCF and PrimeCare.  Id. ¶¶ 114-15.  Count III of the Complaint sets forth state law negligence claims against both the medical professionals and PrimeCare, alleging that those Defendants "fail[ed] to provide adequate medical care" in violation of their duty to comply with generally accepted medical standards when treating Gibbons.  Id. ¶ 116-21.  As a result of these alleged violations, Gibbons seeks compensatory and punitive damages, as well as reasonable attorneys' fees and costs.  Id. ¶ 122-23.

On April 25, 2016, the PrimeCare Employee Defendants moved to dismiss Gibbons' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to adequately plead either a civil rights

violation or a state law negligence claim against them.  PrimeCare Defs.' Mot. at 2-3.  On May

9, 2016, the County Defendants moved for a partial dismissal of the Complaint and requested the

following relief: (1) that MCCF, Algarin, Jones, Davneport, Baurer, and Appel be dismissed with

prejudice for failure of Gibbons to adequately plead civil rights violations against them; (2) that

paragraph 27 of the Complaint be stricken as to MCCP and Montgomery County; (3) that

paragraph 30 of the Complaint be stricken; and (4) that the Complaint's prayer for punitive

damages be stricken.  Cnty. Defs.' Mot. at 2-3.  While these Motions were pending, the Court

received a May 13, 2016 letter from counsel requesting that a Stipulation and Order be entered:

(1) dismissing MCCF as a party to this action with prejudice; (2) striking paragraph 27 of the

Complaint as to Montgomery County;[1] (3) striking paragraph 30 of the Complaint in its

entirety,[2] and dismissing Jones and Davenport from the action without prejudice; and (4) striking

the request for punitive damages as to Montgomery County.  Order (Doc. No. 19) at 1-2.  The

Order and Stipulation was entered by the Court on May 17, 2016.  This Court will now address

---

[1]    Paragraph 27 of the Complaint alleges:

> PrimeCare Medical, Inc., and/or Montgomery County Correctional Facility, and/or Montgomery County are liable for the negligence, reckless disregard and deliberate indifference of Defendants, Dr. Carillo, Nurse [Rinehart], Nurse Irvine, Nurse Crossan, Nurse McFadden and Nurse Brown and/or their agents, servants, and/or employees under the applicable legal theories of agency, master-servant, <u>respondeat superior</u>, and/or right of control.

Compl. ¶ 27.

[2]    Paragraph 30 of the Complaint alleges:

> Defendants, Montgomery county Correctional Facility and/or Montgomery County are liable for the reckless disregard and deliberate indifference of Defendants, Julio Algarin, Warden, Phillip Rummel, C.O., Shicknick, C.O., Jones, C.O., Davenport, C.O., Baurer, C.O., Davis C.O[.] and Appel, C.O[.] and/or their agents, servants, and/or employees under the applicable legal theories of agency, master-servant, <u>respondeat superior</u>, and/or right of control.

Compl. ¶ 30.

the remaining claims set forth in the Motions to Dismiss.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   In Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit set forth a two-part analysis for reviewing motions to dismiss in light of Twombly and Iqbal.  First, the court should separate the facts averred in the complaint from any legal conclusions asserted therein.  Id. at 210-11.  All facts pleaded must be accepted as true, but legal conclusions can be disregarded.  Id.  Second, the court must determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief" based upon the presence of at least some factual allegations to support the claims asserted.  Id. at 210.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57 (internal quotation marks omitted)).  "In light of Twombly, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest'

6

the required element. . . ."  Great W. Mining & Mineral Co., 615 F.3d at 177 (quoting Twombly,

550 U.S. at 556).  It requires "'enough facts to raise a reasonable expectation that discovery will

reveal evidence of the necessary element.'"  Id. (quoting Twombly, 550 U.S. at 556).  In

determining the adequacy of a complaint, this Court must "accept all factual allegations as true

[and] construe the complaint in the light most favorable to plaintiff."  Warren Gen. Hosp. v.

Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).

III.    **DISCUSSION**

A.    **Gibbons' Eighth Amendment Claims Made Pursuant to 42 U.S.C. § 1983**

The Eighth Amendment proscription against cruel and unusual punishment requires that

prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97,

103-05 (1976).  To set forth a cognizable claim in this context, an inmate must allege facts

demonstrating: (1) a "serious medical need"; and (2) actions or omissions by a prison official

that indicate a "deliberate indifference" to that need.  Id. at 104; Rouse v. Plantier, 182 F.3d 192,

197 (3d Cir. 1999).[3]

A medical need is deemed "serious" in satisfaction of the first prong of the Estelle test if

it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious

---

[3]    Although Gibbons refers to both the Eighth and Fourteenth Amendment in Count I of the
Complaint, this Court understands Gibbons' Section 1983 claim for inadequate care as one
arising solely under the Eighth Amendment, as Gibbons was at all times relevant to his
allegations a convicted prisoner, as opposed to a pre-trial detainee in which the Fourteenth
Amendment would apply.  See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581-82 (3d
Cir. 2003) (explaining that a Section 1983 claim for those whom the state has already "secured a
formal adjudication of guilt in accordance with due process of law" arises under the Eighth
Amendment and under the Due Process Clause of the Fourteenth Amendment for those who are
in custody but who have not yet been convicted, such as pre-trial detainees, although the
standard to be used by the district courts to evaluate those claims are the same) (quoting City of
Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).

that a lay person would easily recognize the necessity for a doctor's attention" or if the delay or denial of adequate medical care causes "unnecessary and wanton infliction of pain," or causes an inmate to suffer a life-long handicap or permanent loss.  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

In this case, Gibbons alleges that he suffered from a torn Achilles tendon, which was confirmed by two physicians and required a course of treatment that eventually necessitated surgery.  Compl. ¶¶ 56, 61, 105.  Because moving Defendants do not challenge this diagnosis or Gibbons' assertion that his injury was severe, he has satisfied the first prong of the Estelle test. See Turner v. Kirsch, No. 08-2005, 2011 U.S. Dist. LEXIS 40517, at *15 (E.D. Pa. Apr. 13, 2011) ("[W]e have no difficulty concluding that Plaintiff's injury [a torn Achilles tendon] is sufficiently severe to allow a reasonable jury to conclude that he had a serious medical need."); see also Hemmings v. Gorczyk, 134 F.3d 104, 109 (2d Cir. 1998) (ruptured Achilles tendon constitutes a serious medical need); Zeigler v. PHS Corr. Health Care, Inc., No. 11-203Erie, 2012 U.S. Dist. LEXIS 76377, at *10-12 (W.D. Pa. June 1, 2012) (same); Taylor v. Plousis, 101 F. Supp. 2d 255, 262 (D.N.J. 2000) (a medical condition "which threatens a plaintiff's ability to walk, even on a non-permanent basis, falls within the ambit of a serious medical need").

Under the second prong of the Estelle test, a prison official acts with deliberate indifference towards a serious medical when he or she recklessly disregards "a substantial risk of serious harm."  Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009).  Deliberate indifference requires a subjective culpable state of mind: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Third Circuit has held that deliberate indifference may exist where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197 (collecting cases). The Third Circuit has also held that "[n]eedless suffering resulting from the denial of simple medical care . . . is inconsistent with contemporary standards of decency, and thus violates the Eighth Amendment." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).

However, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." Gindraw v. Dendler, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing Estelle, 429 U.S. at 106). Indeed, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Id. (citing Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, at *8 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care . . . ."). Similarly, disagreements between an inmate and prison medical personnel about the kind of treatment received generally are not held to violate the Eighth Amendment. Id. Thus, such complaints fail as constitutional claims under Section 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw, 967 F. Supp. at 836; see, e.g., Brown v. Borough of Chambersburg, 903

F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

### 1.   Nurse Irvine

Setting aside legal conclusions,[4] Gibbons' factual allegations concerning Irvine include that she "was a registered nurse duly licensed to practice nursing in the Commonwealth of Pennsylvania," that she was "an employee/agent of . . . [PrimeCare] and/or [MCCF] and/or Montgomery County" and that she was "assigned and responsible for providing health care services to inmates at [MCCF], including [Gibbons]." Compl. ¶ 18. These allegations do not support a cognizable Section 1983 claim as to Irvine.

It is well-established in this Circuit and elsewhere that Section 1983 claims cannot be predicated solely on the operation of respondeat superior. Polk Cnty. v. Dodson, 454 U.S. 312, 315 (1981); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). A defendant's conduct must have a causal connection to the plaintiff's injury for Section 1983 to attach. Martinez v. California, 444 U.S. 277 (1980). Specifically, each named defendant must be shown to have been personally involved in the events or occurrences which underlie a claim. Evancho, 423 F.3d at 353; Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." Evancho, 423 F.3d at 353 (quoting Rode, 845 F.2d at 1207).

---

[4]   The broad allegations contained in Count I of the Complaint that each of the individually named Defendants were "deliberately indifferent and acted with a reckless disregard to Mr. Gibbons' serious medical needs" and otherwise "intended to harm Mr. Gibbons and/or was recklessly and deliberately indifferent to the health, safety, and overall well-being of Mr. Gibbons," Compl. ¶ 109-113, are legal conclusions that may to be disregarded by this Court in determining the sufficiency of Gibbons' pleading. See Fowler, 578 F.3d at 210-11.

Gibbons' Complaint contains no additional factual allegations directed to Irvine other than those stated above.  Irvine is not alleged to have any knowledge, either direct or indirect, of Gibbons' injury or to have had any involvement in his treatment or the denial of treatment. Thus, Gibbons has failed to plead facts from which it might be inferred that Irvine had any personal involvement in the alleged misconduct.  See Tripati v. Hale, 2015 U.S. Dist. LEXIS 45857, at *13-14 (W.D. Pa. Mar. 2, 2015) (dismissing Section 1983 claims where the complaint consisted solely of "brief biographical summaries" of defendants, but otherwise "failed to plead any facts from which it might be inferred that any of the individual [d]efendants had any personal involvement in the alleged misconduct"); Tutora v.Sweeney, 2014 U.S. Dist. LEXIS 172694, at *8 (E.D. Pa. Dec. 15, 2014) (dismissing Section 1983 claim for failure to "allege facts establishing that either defendant was aware of [plaintiff's] condition, played any role in determining the medical treatment he received, or was responsible for establishing and maintaining the medical policy that allegedly violated his constitutional rights").

Accordingly, the PrimeCare Employees Defendants' Motion to Dismiss will be granted as to the Section 1983 claim asserted against Irvine in Count I of the Complaint.

### 2.   <u>Nurse Rinehart</u>

The factual allegations directed to Rinehart include that on April 10, 2014, after Gibbons submitted a telephone sick call request "related to his immense pain and injury," he was "finally seen by Defendant, Nurse Mary [Rinehart]," who provided "no medical treatment or follow[-]up examination/testing . . . ."  Compl. ¶ 52.  Gibbons further alleges that it was not until April 16, 2014, after he lodged additional complaints of pain to Shicknick, Davis, and via the telephone sick call system, that he was examined by Dr. Carillo and diagnosed with a ruptured Achilles tendon.  Id. ¶ 53-56.  Rinehart argues that because Gibbons was treated for his injury shortly

after being seen by her on April 10, 2014, the facts suggest no more than a delay in treatment, which "does not equate to deliberate indifference on the part of Nurse Rinehart."  PrimeCare Defs.' Mot. at 8-9.  This Court agrees with Rinehart that Gibbons has failed to satisfy the second prong of Estelle test.

As discussed above, to set forth a cognizable Eighth Amendment claim, a plaintiff must allege facts demonstrating not only that the plaintiff suffered from a serious medical need, but that the act or omission by that defendant demonstrated "deliberate indifference" to that need, which has been defined in this Circuit and elsewhere as more than an allegation that medical treatment was simply denied or delayed, but that the prison official "knows of and disregards an excessive risk to [the inmate's] health or safety."  Farmer, 511 U.S. at 837; Giles, 571 F3d at 330 (prison official must "recklessly disregard a substantial risk of serious harm"); see also Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 193 (3d Cir. 2001) (quoting Rouse, 182 F.3d at 197) ("[C]laims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); McAnulty v. Mooney, No. 3:13-cv-03104, 2016 U.S. Dist. LEXIS 277, at *18 (M.D. Pa. Jan. 4, 2016) ("To act with deliberate indifference is to 'recklessly disregard a substantial risk of harm.'  A plaintiff may make this showing by establishing that the defendants 'intentionally denied or delayed medical care.'") (internal citations omitted).

Here, Gibbons alleges that Rinehart violated his Eighth Amendment right by failing to provide him with medical treatment and not referring him to another medical professional for treatment, even though he had stated in his sick call request that he was suffering from "immense pain and injury" as a result of his accident.  Compl. ¶ 52.  He further avers that a failure to receive any treatment for his torn Achilles tendon during this time exacerbated his injury and

resulted in him needing a surgical reconstruction of his Achilles tendon, as opposed to a mere surgical repair.  Id. ¶ 105.  Absent from his allegations, however, are any facts that would allow this Court to infer that Rinehart acted with either reckless disregard or deliberate indifference to Gibbons' claim of pain.   See, e.g., Scott v. Manenti, No. 15-7213 (JBS-AMD), 2016 U.S. Dist. LEXIS 1445, at *8-9 (D.N.J. Jan. 7, 2016) (dismissing allegations as to a physician who plaintiff claimed to have been "involved in" delaying his access to medical treatment because the plaintiff failed to set forth any facts "specifically alleg[ing] how she was involved in denying [that] treatment or how she exhibited deliberate indifference towards [p]laintiff's condition"); McAnulty, 2016 U.S. Dist. LEXIS 277 at *19 (dismissing claims against defendants where plaintiff's allegations of deliberate indifference were "too vague and conclusory to adequately state a claim" because he failed to "identify any facts to support his conclusory assertion that [d]efendants intentionally refused to provide care or delayed treatment for non-medical reasons").  As to Nurse Rinehart's state of mind, Gibbons merely alleges that she acted "with reckless disregard and deliberate indifference."  Compl. ¶ 58.  This allegation is a legal conclusion which need not be afforded any weight.  See Fowler, 578 F.3d at 210-11.

Accordingly, the PrimeCare Employee Defendants' Motion to Dismiss will be granted as to the Section 1983 claim asserted against Rinehart in Count I of the Complaint.

**3.   Nurses McFadden and Brown**

Gibbons alleges that following treatment by Dr. Ahmad at the Rothman Institute, Compl. ¶ 64, he submitted a paper sick call request on April 29, 2014 to MCCF inquiring into the status of his request for treatment and to advise that the plastic bag he was given to cover his foot in the shower had ripped and the cast had soaked with water, id. ¶ 77.  He claims that on May 1, 2014, McFadden responded to this paper sick call request, indicating that "the doctor said that he

13

should not bear weight [on his ankle], use his crutches and everything was in progress," but otherwise did not provide any medical treatment or replace the bag to cover his cast.  Id. ¶ 78. Gibbons further alleges that several days later, after a second visit to the Rothman Institute on May 5, 2014, id. ¶ 84-85, he submitted another paper sick call request on May 6, 2014 advising that he was in a "GREAT DEAL of pain in [his] left ankle and calf due to a torn Achilles Tendon," and that he "fell down stairs yesterday and broke [his] cast," "did not have a boot on [his] foot," and "was supposed to get a boot and a bag to take a shower."  Id. ¶ 93 (emphasis in original).  On May 7, 2014, Brown responded to the sick call request by stating, "You have been tasked for nursing sick call please wait to be triaged, thanks!"  Id. ¶ 94.  Claiming that he was not seen by anyone following this response, Gibbons submitted another paper sick call request on that same day, May 7, 2014, reiterating that he still did not have a boot or a bag large enough to cover his leg.  Id. ¶ 95.  He avers that on May 9, 2014, Brown again responded, "You have been tasked [to] Dr. Carrillo for follow[-]up appointment" but he was not seen by any personnel.  Id. ¶ 96.  Based upon these allegations, McFadden and Brown argue that Gibbons Eighth Amendment claim fails because he "had already been receiving treatment in the facility, as well as [at] an outside specialist" at the time that they responded to his sick call requests, "there was, at most, a delay in the continuation of treatment [Gibbons] received" and Gibbons has not otherwise pled facts sufficient to demonstrate deliberate indifference by either Defendant. PrimeCare Defs.' Mot. at 8.  As discussed below, this Court finds that Gibbons has not sufficiently pled Section 1983 claims against McFadden or Brown.

Although "deliberate indifference" may be shown by intentionally denying or delaying medical care for a non-medical reason, Giles, 571 F.3d at 339, it generally cannot be found once an inmate has already been offered some level of medical care for his or her injury, Clark, 2000

U.S. Dist. LEXIS 14999, at *8 ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care.").  Where the inmate has already received or is in the process of receiving medical attention, and disputes over the adequacy of that treatment rarely rise to the level of constitutional violations.   See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "allegations of medical malpractice" or "mere disagreement as to the proper medical treatment" are not sufficient to establish a constitutional violation); Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (finding that prison medical authorities are "afford[ed] considerable latitude . . . in the diagnosis and treatment of the medical problems of inmate patients," and "negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution"); United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n. 2 (3d Cir. 1979) (distinguishing between cases where an inmate claims "complete denial of medical care" and mere disputes over the "adequacy of [] treatment" already provided, with federal courts being "reluctant . . . to constitutionalize" the latter claims).

In the case at hand, Gibbons alleges that his interaction with McFadden occurred after he was seen and diagnosed by Dr. Carillo, Compl., ¶ 56, and by Dr. Ahmad at the Rothman Institute, id. ¶ 61.  McFadden's response to Gibbon's request for medical attention included relaying treatment information from the doctor that Gibbons should continue to "not bear weight [on his ankle], use his crutches and everything was in progress."  Id. ¶ 78.  Under these facts, it can reasonably be inferred that McFadden attended to Gibbons' medical needs at the time he presented for care by relaying information from the doctor and that Gibbons is simply dissatisfied with the course of treatment that McFadden provided.  However, as addressed above, a disagreement as to the adequacy of treatment provided is, at best, a claim of medical

malpractice and does not satisfy the pleading standard required for an Eighth Amendment claim.
See Brown, 903 F.2d 274; Gindraw, 967 F. Supp. at 836; see also Gause v. Diguglielmo, 339 F.
App'x 132 (3d Cir. 2009) (a dispute over choice of medication does not rise to the level of an
Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009) (same).

 Moreover, Gibbons has not set forth any well-pleaded facts indicating that the alleged
delay in treatment by either McFadden or Brown exhibited a pattern of deprivation that would
rise to the level of deliberate indifference.  As the district court noted in Zilick v. Doll:

> Inconsistencies or differences in medical diagnoses, short delays unaccompanied
> by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to
> summon the medical specialist of the inmate's choice, perform tests or procedures
> that the inmate desires, or to explain to the inmate the reason for medical action or
> inaction does not amount to a claim of deliberate indifference under the Eighth
> Amendment.

2015 U.S. Dist. LEXIS 163745, at *12-13 (M.D. Pa. Dec. 4, 2015) (citing Rodriguez v. Thomas,
No. 1:cv-12-02090, 2015 U.S. Dist. LEXIS 40885, 2015 WL 1470719, at *9 (M.D. Pa. Mar. 31,
2015) (further citations omitted)); see also Ayala v. Terhune, 195 F. App'x 87, 90-91 (3d Cir.
2006) (finding no deliberate indifference where a prisoner suffered occasional delays of up to
four days in receiving prescription medication, explaining that prisoner received regular medical
treatment and that such delays were sporadic and did not exhibit a pattern of deprivation); Turner
v. Kirsch, No. 08-2005, 2011 U.S. Dist. LEXIS 40517, at *36 (E.D. Pa. Apr. 13, 2011) ("A one
week delay for a follow-up appointment with an outside specialist, attributable to a transportation
issue, is simply insufficient to support a constitutional violation, particularly where Plaintiff was
subject to an ongoing course of treatment at the time."); Gandy v. Corr. Med. Svcs. Inc., No. 06-
21 (AET), 2007 U.S. Dist. LEXIS 22872, at *12 (D.N.J. Mar. 29, 2007) ("Plaintiff would have
the Court read broadly the proscription against delaying medical treatment for non-medical
reasons.  Prisoners are entitled to adequate care, not the best and most timely care possible,

therefore the Court will not entertain the notion that any delay for non-medical reasons is constitutionally suspect.") (citations omitted).

Gibbons' allegations that Brown responded to his paper sick call request by indicating that he had been "tasked to be triaged" and "tasked [with] Dr. Carillo for follow[-]up appointment," Compl. ¶¶ 94, 96, simply indicate that Brown logged Gibbons' request and tasked him to be seen by a physician.  They do not permit this Court to draw any inference that Brown acted with deliberate indifference or purposeful disregard in violation of the Eighth Amendment. Further, Gibbons does not plead facts to indicate that actions of either McFadden or Brown were based upon some ulterior motive beyond routine patient care within the confines of MCCF's policies.  See Spruill, 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[] his factual allegations to the alleged mental states" of the defendants).  Nor has he alleged that the four-day delay in treatment between McFadden's response and his next visit to Dr. Ahmad at the Rothman Institute, Compl. ¶¶ 78, 85, or the seven-day delay between Brown's responses and his release from MCCF, id. ¶¶ 94, 96, 103, resulted in substantial harm to his injury.[5]  See Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (constitutional claim failed where prisoner-plaintiff "presented no evidence of any harm resulting from a delay in medical treatment"); Phillips v. Rustin, No. 06-1338, 2009 U.S.

---

[5]   Although Gibbons contends that "[a]n acute surgical repair [of his Achilles tendon] was not an option due to the delay in treatment and inadequate care" during the entire relevant time period of March 28 to May 16, 2014, Compl. ¶ 105, he fails to specify the particular harm suffered during the four- and seven-day delays that resulted from McFadden's and Brown's alleged conduct.  See Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (noting that a complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is personally liable for the harm alleged); Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (the Eighth Amendment is only violated if "delays occurred to a patient with problems so severe that delays would cause significant harm and that [d]efendants should have known this to be the case").

Dist. LEXIS 51401, at \*23-24 (W.D. Pa. June 17, 2009) (no constitutional violation after medical treatment was delayed six days where there was no evidence that the plaintiff suffered any harm because of the delay); <u>Razzoli v. Sec'y of Navy</u>, No. 3:cv-06-1833, 2009 U.S. Dist. LEXIS 75990, at \*13-14 (M.D. Pa. Aug. 25, 2009) (no constitutional violation for "a delay of a few days between his injury and the placement of his foot in a cast" where there is "no allegation that . . . any treatment was delayed by the [defendants] for a non-medical reason or that the relatively short delay . . . aggravated [plaintiff's] injury").

For these reasons, Gibbons' Section 1983 claims against McFadden and Brown in Count I of the Complaint will be dismissed.

### 4.   <u>Nurse Crossan and Warden Algarin</u>

Gibbons identifies Crossan as "a supervisor of medical services at [MCCF]" who was "assigned and responsible for providing health care services to inmates . . . including Mr. Gibbons," Compl. ¶ 19, and Algarin as "warden of [MCCF] with supervisory and administrative responsibilities." <u>Id.</u> ¶ 7.  He alleges that on April 28, 2014, both Crossan and Algarin, among others, "implemented a new system of paper sick call requests to replace the aforementioned telephone requests." <u>Id.</u> ¶ 76.  As addressed below, this Court finds that these allegations are inadequate to establish liability either individually or in a supervisory capacity under Section 1983.  <u>See</u> PrimeCare Defs.' Mot. at 8; Cnty Defs.' Mot. at 12.

The Third Circuit has identified two viable theories of liability in which supervisors can be held accountable for injuries sustained by an inmate in violation of their Eighth Amendment rights.  They are: (1) where a supervisor establishes and maintains a policy, practice or custom which directly causes a constitutional harm; and (2) where the supervisor participates in violating a plaintiff's rights, directs others to violate them, or has knowledge of and acquiesces in the

violations.  Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010); Brown v. Wetzel, 2014 U.S. Dist. LEXIS 153923, at *8 (E.D. Pa. Oct. 29, 2014).

To state an Eight Amendment claim against a supervisor under Section 1983 based upon a deficient policy or procedure, a plaintiff is required to: "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."  Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did."  Id. (citing Sample, 885 F.2d at 1118).  Rather, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the 'identified deficiency' and the 'ultimate injury.'"  Id.

In this case, the factual allegations directed to Crossan and Algarin appear to focus on their responsibility for implementing the paper sick call system used by Gibbons to report complaints about his injury while incarcerated.  However, the Complaint is devoid of any description of what the "paper sick call" system entailed or how the system caused a constitutional injury.  Nor does Gibbons allege any facts from which this Court could infer that either Crossan or Algarin was aware of or indifferent to an unreasonable risk created by the paper sick call system.  Such allegations are necessary for Gibbons' allegations to survive scrutiny at this juncture in the proceedings.  See Brown, 2014 U.S. Dist. LEXIS 153923, at *8

("Nowhere in [p]laintiffs['] [] complaint does he identify the existence of any specific policy or practice . . . that created an unreasonable risk of constitutional injury to [p]laintiff.  Nor does [p]laintiff allege any facts from which one could even infer that any of these supervisor [d]efendants were either aware of or indifferent to an unreasonable risk created by any such policy.  As such, the [] complaint fails to state a claim against these [d]efendants premised upon a supervisor liability theory."); <u>Keohane v. Lancaster Cnty.</u>, No. 07-3175, 2010 WL 3221861, at *14 (E.D. Pa. Aug. 13, 2010) ("However, even if these practices constituted 'custom,' [p]laintiffs must also establish that the practice was so widespread that the policy making officials had either actual or constructive notice, and acquiesced in the custom."); <u>Abraham v. Digugleilmo</u>, 2010 U.S. Dist. LEXIS 51941, at *15-16 (E.D. Pa. May 25, 2010) (noting that although "[s]pecific details of the allegedly injurious policies are not necessary at this [motion to dismiss] stage, [] more is required than the bald statement that an injurious policy exists"); <u>Rye v. Erie Cnty. Prison</u>, 689 F. Supp. 2d 770, 780 (W.D. Pa. 2009) (finding that a prisoner must both "'identify a custom or policy, and specify what exactly the custom or policy was'" that caused the constitutional violation to survive Rule 12(b)(6) scrutiny) (quoting <u>McTernan v. City of York</u>, 564 F.3d 636, 658 (3d Cir. 2009)).  Thus, without alleging more as to the nature of the paper sick call program, as well as the official and/or customary use of the program and how it was utilized to violate Gibbons' Eighth Amendment rights, the Court cannot infer that any such connection exists between either Crossan or Algarin and the violations alleged concerning Gibbon's injury. For these reasons, this Court finds that the Complaint fails to state claims against Crossan and Algarin premised upon a supervisory theory of liability.

Accordingly, Gibbons' Section 1983 claims set forth in Count I of the Complaint against Crossan and Algarin will be dismissed.

###### 5.     Correctional Officers Appel and Baurer

Gibbons alleges that on April 25, 2014, he asked Appel if "a boot and bag, big enough to cover his cast" were available, but that he was "ignored and not responded to."  Compl. ¶ 74.  He contends that a few days later, on May 5, 2014, he was transported by Baurer to a follow-up appointment with Dr. Ahmad.  Compl. ¶ 83.  At the end of his appointment, McDermott, an employee of the Rothman Institute, provided Gibbons with "a large shopping bag to keep his cast from getting wet in the shower which Baurer subsequently confiscated and did not replace."  Id. at ¶ 86.  Based on these facts, Gibbons alleges that Appel and Baurer violated his constitutional rights.  Id. ¶¶ 109-13.  Appel argues that because Gibbons was already under the care of medical professionals, he did not demonstrate "deliberate indifference" by failing to address Gibbons' medical requests.  Cnty. Defs.' Mot. at 15.  Baurer maintains that his "confiscation of [Gibbons'] shopping bag, which could be considered an item of contraband," was not evidence of "deliberate indifference" to Gibbons' serious medical needs.  Id. at 16.  This Court agrees with both Appel and Baurer and finds that the allegations against them do not rise to the level of "deliberate indifference" sufficient to sustain an Eighth Amendment claim.

It is well-established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Durmer, 991 F.2d at 69.  The rationale for this rule has been explained by the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment

responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill, 372 F.3d at 236.

As numerous courts applying this rule have found, merely responding to or reviewing an inmate medical grievance does not rise to the level of personal involvement sufficient to allege an Eighth Amendment deliberate indifference claim against non-medical prison personnel.  See Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005) (failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Here, the only allegation against Appel, a non-medical prison official, is that in response to Gibbons' request for "a boot and bag, big enough to cover his cast," he was "ignored" and "not responded to."  Compl. ¶ 74.  Gibbons concedes that at the time of the request, he had already been seen by the medical director of MCCF, Dr. Carillo, id. ¶ 56, as well as orthopedic foot and ankle surgeon, Dr. Ahmad at the Rothman Institute, id. ¶ 61.  Based on the foregoing, Gibbons has failed to allege facts sufficient to establish "deliberate indifference" on the part of Appel.

Baurer is also alleged to be a non-medical prison official, id. ¶ 12, who interacted with Gibbons while he was already receiving treatment from both a prison physician as well as an outside specialist, id. ¶¶ 56, 61.  Gibbons avers that Baurer demonstrated "deliberate indifference" for his serious medical condition by confiscating the plastic bag issued by the Rothman Institute to cover his cast while he was showering.  Id. ¶ 86.  This allegation does not establish a plausible Eighth Amendment claim.  In certain instances, a non-medical official deliberately withholding prescribed medical treatment from a physician can be found to present a viable constitutional claim.  See Durmer, 991 F.2d at 69; Maskelunas v. Wexford Health Source, Inc., No. 2:14-cv-369-KRG-KAP, 2014 U.S. Dist. LEXIS 180828, at *3 (W.D. Pa. Oct. 30, 2014) (permitting a deliberate indifference claim to proceed against Wexford based on allegations that the defendants "countermanded treatment already implicitly found necessary by at least one other medical professional . . . solely to save money").  However, this is not the case here.  Gibbons does not allege that the protective plastic bag confiscated by Baurer was either prescribed by a medical professional or was otherwise deemed medically necessary to treat his injury.  He only alleges that he was given "a large shopping bag" by McDermott of the Rothman Institute for the purpose of "keep[ing] his cast from getting wet in the shower."  Compl. ¶ 85-87.  Additionally, Gibbons does not allege that he suffered any harm or injury as a result of Baurer confiscating the plastic bag.  Both of these elements are necessary to assert an Eighth Amendment claim against Baurer.

The district court in Vasquez v. Akano, 2006 U.S. Dist. LEXIS 52083 (E.D. Pa. Apr. 20, 2006) confronted similar allegations when the plaintiff in that case filed a lawsuit against a correctional officer, alleging that, inter alia, the correctional officer violated the plaintiff's Eight Amendment rights when he "refused to provide plaintiff with a plastic bag to cover his splint

while he showered because plastic bags are considered contraband." Id. at *11-12.  In

dismissing the complaint as to the correctional officer, the district court noted that "[defendant's]

refusal to provide plaintiff with a plastic bag to cover his splint is not a constitutional violation"

and otherwise did not demonstrate that the defendant "knew of or disregarded an excessive risk

to inmate health or safety" sufficient to meet the "deliberate indifference" standard.  Id. at *13.

Like the plaintiff in Vasquez, Gibbons has failed to aver facts sufficient to sustain an Eighth

Amendment claim against Baurer.

Accordingly, Gibbons' Section 1983 claims set forth in Count I of the Complaint against

Appel and Baurer will be dismissed.

### B.    State Law Negligence Claims Against PrimeCare Employee Defendants

Gibbons brings state law negligence claims against the PrimeCare Employee Defendants

in Count III of his Complaint.   He alleges that each of these Defendants failed to comply with

"generally accepted medical standards of care" in treating his injury and that his injuries were "a

direct and proximate" result of their negligence.  Compl. ¶ 119.

The state law negligence claims asserted by Gibbons are properly characterized as

professional negligence or medical malpractice claims.  See Grundowski v. United States, 2012

U.S. Dist. LEXIS 68438, at *17 (M.D. Pa. May 16, 2012) (quoting Ditch v. Waynesboro Hosp.,

917 A.2d 317, 322 (Pa. Super. Ct. 2007)) (finding that when evidence is predicated "upon facts

constituting medical treatment . . . involv[ing] diagnosis, care, and treatment by licensed

professionals," the evidence "must be characterized as [evidence of] professional negligence").

The Pennsylvania courts define medical malpractice "as the unwarranted departure from

generally accepted standards of medical practice resulting in injury to a patient, including all

liability-producing conduct arising from the rendition of professional medical services."  Pomroy

v. Hosp. of Univ. of Pa., 105 A.3d 740, 744-45 (Pa. Super. Ct. 2014) (quoting Toogood v. Owen

J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003)).  To establish a medical malpractice

claim under Pennsylvania law, a plaintiff must allege that: "(1) the physician owed a duty to the

patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of,

or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages

suffered by the patient were a direct result of that harm."  Hoffman v. Brandywine Hosp., 661

A.2d 397, 399 (Pa. Super. Ct. 1995) (citing Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990)).

This Court will now address the state law negligence claims asserted by Gibbons against each of

the PrimeCare Employee Defendants.

### 1.   Nurse Irvine

As discussed above, Gibbons allegations concerning Irvine include that she was a

registered to practice nursing in Pennsylvania, was an employee of PrimeCare and MCCF, and

was assigned and responsible for providing health care services to inmates at MCCF, including

Gibbons.  Compl. ¶ 18.  However, beyond these allegations, Gibbons fails to explain the scope of

her responsibilities for his care, or any specific act or omission by Irvine that proximately caused

his Achilles tendon injury or the exacerbation of his injury.  Instead, Gibbons alleges only that

Irvine was generally responsible for his welfare because of her role in "providing health care

services to inmates at [MCCF], including Mr. Gibbons."  Id. ¶ 18.  Taken as a whole, Gibbon's

allegations against Irvine are insufficient to state a medical malpractice claim under

Pennsylvania law.  See Bullock v. Ancora Psychiatric Hosp., 2011 U.S. Dist. LEXIS 92307, at

*37 (D.N.J. Aug. 18, 2011) (allegations which stated that defendants were "generally responsible

for plaintiff's welfare," but failed to specify any "specific act or omissions . . . that proximately

caused [plaintiff's] injuries" were insufficient to state a negligence claim).

Accordingly, Count III of Gibbons' Complaint will be dismissed as to Irvine.

### 2.   Nurse Crossan

Similar to Irvine, Gibbons alleges that Crossan was an employee of PrimeCare and MCCF licensed to practice nursing in Pennsylvania who acted as a supervisor responsible for providing services to inmates at MCCF, including Gibbons.  Compl. ¶ 19.  The only other factual allegation directed to Crossan is that he was involved in implementing a "new system of paper sick call requests" that replaced the telephone requests previously used by inmates to report medical complaints to the facility.  Id. ¶ 76.  Even if these allegations permit this Court to infer that Crossan owed a duty to Gibbons as a medical professional overseeing his care, Gibbons has not pled any facts suggesting how Crossan's implementation of the paper sick call system breached that duty or how Crossan's actions were the proximate cause of Gibbons' injuries to satisfy the other elements of his medical malpractice claim.

Accordingly, Count III of Gibbons' Complaint will be dismissed as to Crossan.

### 3.   Nurses Rinehart, McFadden and Brown

Gibbons alleges that as nurses, Rinehart, McFadden and Brown each owed a professional duty of care to MCCF inmates, including Gibbons, id. ¶¶ 17, 20, 21, and that each nurse responded to a sick call request by Gibbons for treatment of the pain associated with his Achilles tendon injury, id. ¶¶ 52, 78, 94, 96.  Gibbons further avers that each nurse ignored his request for medical assistance and/or failed to provide any treatment to him and that their conduct contributed to an exacerbation of his original injury, which "could have been fixed acutely" had he "received adequate medical treatment earlier,"  id. ¶¶ 84, 105.  These allegations suggest a factual theory of medical malpractice sufficient to survive Rule 12(b)(6) scrutiny.  See, e.g., Bullock v. Ancora Psychiatric Hosp., 2011 U.S. Dist. LEXIS 92307, at *38-39 (D.N.J. Aug. 18,

2011) (finding that a physician's failure to respond to [plaintiff's] known injuries with appropriate haste set forth a claim of medical malpractice); Abraham, 2010 U.S. Dist. LEXIS 51941, at *33-34 (E.D. Pa. May 25, 2010) (allegations that a physician "delay[ed] in sending plaintiff to the infirmary" and "should not have prescribed antibiotics [but] . . . instead should have sent [plaintiff] immediately to the hospital" sufficiently alleged a medical malpractice claim).

Accordingly, Rinehart, McFadden and Brown's request for the dismissal of the state negligence claims against them in Count III of Gibbons' Complaint will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Count I of the Complaint will be dismissed as to Irvine, Rinehart, McFadden, Brown, Crossan, Algarin, Appel and Baurer and Count III of the Complaint will be dismissed as to Irvine and Crossan.  The Court acknowledges that this is a civil rights case and pursuant to the laws of this Circuit, leave to amend must be granted sua sponte when a district court dismisses the allegations.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251-52 (3d Cir. 2007) ("[D]istrict courts must offer amendment — irrespective of whether it was requested — when dismissing a [civil rights] case for failure to state a claim unless doing so would be inequitable or futile."); M.U. v. Downingtown High Sch. E., 103 F. Supp. 3d 612, 627 (E.D. Pa. 2015) ("In civil rights cases such as this one, leave to amend must be granted sua sponte before dismissing the complaint.").  Therefore, the dismissals granted by this Court are without prejudice and Gibbons will be given leave to amend the Complaint.  An appropriate Order follows.

/s/ Marilyn Heffley
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

27